**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **SHIRLEY FICHTER,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **02:10 cv 00367** |
| | ) | |
| **AMG RESOURCES CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is Defendant's MOTION FOR SUMMARY JUDGMENT (Document No. 37).  The matter has been thoroughly briefed (Document Nos. 38, 46, 53) and is ripe for disposition.  The factual record has also been thoroughly developed via the Statement of Undisputed Facts of Defendant, AMG Resources Corporation, ("AMG") (Document No. 39), Plaintiff's Response to Defendant's Statement of Undisputed Facts (Document No. 47), Plaintiff's Statement of Additional Material Facts Pursuant to L.R. 56.1C1(c) (Document No. 48), and the numerous exhibits submitted by both parties.

Procedural Background

Plaintiff Shirley Fichter ("Fichter") initially brought this lawsuit on March 23, 2010. Fichter filed a four-count Amended Complaint on January 27, 2011, in which she alleges  (1) disability discrimination due to a hostile work environment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101 *et seq.* (West, Westlaw through P.L. 112–139), (2) disability discrimination due to a hostile work environment in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.* (West, Westlaw through

2012 Reg. Sess.), (3) unlawful termination and gender discrimination due to a hostile work

environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §

2000e *et seq*. (West, Westlaw through P.L. 112–139), and (4) gender discrimination due to a

hostile work environment in violation of the PHRA, 43 Pa. Cons Stat. Ann. § 951 *et seq*.

The Court notes that in Plaintiff's Brief in Opposition to Defendant's Motion for

Summary Judgment ("Plaintiff's Brief"), Fichter withdraws her disability discrimination claims

under the ADA and the PHRA[1].  *See* Pl's Br. 1.  Thus, the Court addresses only the claims for

gender discrimination due to a hostile work environment in violation of Title VII and the PHRA.

Factual Background

The facts relevant to this discussion, viewed in a light most favorable to Fichter, are as

follows.  AMG is a corporation engaged in marketing and processing scrap metal and secondary

steel products.  Fichter was originally employed by Vulcan Materials Company until 1988 when

AMG acquired Vulcan, and Fichter became an employee of AMG.  Fichter was an

administrative clerk for AMG, performing general office functions and working on accounts

receivable before assuming responsibilities for AMG's scrap accounts payable function.  In June

2008, over Fichter's objections that she did not want an assistant, Gregory Cercone ("Cercone")

was hired by AMG to assist with her workload.  Fichter directed Cercone in his day-to-day

assignments.

From March 25, 2009 through May 31, 2009, Fichter was on non-work medical leave

from AMG, during which time Cercone performed Fichter's job duties.  During this leave,

Fichter was contacted by Brian Cohen ("Cohen"), AMG's Chief Financial Officer and Fichter's

---

[1] "The reason for this is that the ADA, as amended, provides that a person cannot proceed under the 'regarded as' prong if the medical condition upon which the claim is based is transitory or minor. Transitory and minor impairments are defined as those with an expected duration of six months or less. 42 U.S.C. § 12102(3)(B).  The condition for which Plaintiff took medical leave in 2009 is transitory and minor under this definition."  Pl's Br. 1.

supervisor, to advise her that when she returned from leave, she would be assigned to assist one of AMG's scrap metal brokers, John Burstein ("Burstein") in both accounts payable and accounts receivable.  She was also advised that Cercone would continue in his current capacity with scrap accounts payable.  Fichter objected to the assignment, and requested to remain in her previous position.  However, as she was the best qualified person at AMG for the position, upon her return from leave, she began the assignment with Burstein.  Her compensation and benefits remained unchanged.  While working with Burstein, Fichter's responsibilities included collecting on unpaid accounts, preparing purchase and sales agreements, and clearing up paperwork.  She was required to wait for Burstein's approval prior to sending out invoices or purchase orders. For the three months she worked for Burstein, Fichter testified that her responsibilities included only a small amount of work, that she believed she could perform in only one hour per week.  As a result, she was idle for the other 39 hours of her work week.  She testified that her coworkers were often busy to the point that they were required to work overtime, and she requested that she be able to assist other employees, including Cercone, with their job responsibilities.  Cohen did not allow her to assist other employees.

On August 31, 2009, Fichter approached Ronald R. Zorn ("Zorn") of the senior management team, and advised him that she was dissatisfied working with Burstein, and that she would begin looking for a new job.  She asked if she could use Zorn as a reference for potential future employment.  She suggested that she be allowed to work from home, or that AMG consider laying her off.  Zorn agreed to be a reference for Fichter, but advised her that AMG had made the decision to not lay off employees during the economic downturn.

On September 8, 2009, Cohen requested that Fichter come into his office.  He stated he

had spoken with Zorn, and presented her with a severance agreement[2] without further discussion.

Cohen never stated that Fichter was fired, and she never clarified with him whether she had been

fired.  She testified that she believed the settlement agreement amounted to an involuntary

termination.  Fichter never signed the agreement, and returned to work the next day.  However,

she advised Cohen that she wanted her last day in the office to be September 17, 2009, and

requested that she be permitted to use her remaining accrued vacation time afterwards so that her

last day of employment with AMG would be September 30, 2009.   At Cohen's request and with

Fichter's permission, AMG hosted a luncheon for Fichter on her last day in the office, September

17, 2009.

Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure reads, in pertinent part:  "[t]he court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  In interpreting Rule 56,

the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time
> for discovery and upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential to that party's case,
> and on which that party will bear the burden of proof at trial.  In such a situation,
> there can be no "genuine issue as to material fact," since a complete failure of
> proof concerning an essential element of the non-moving party's case necessarily
> renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).

A dispute of material fact is genuine only if the evidence is such that a reasonable jury

could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[2] The severance agreement, titled "Agreement and General Release," offered Fichter eight weeks of salary
continuation, and a continuation of medical benefits through the end of 2009 in exchange for a general
release of any claims Fichter may have had against AMG.  It further provided that Fichter was entitled to
nine days of accrued vacation time, and allowed her 45 days to consider the agreement or consult with an
attorney.  Statement of Undisputed Facts, Exhibit H.

248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").   The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine dispute of material fact exists rests with the movant.  *Celotex*, 477 U.S. at 323.

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.  If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Petruzzi's IGA Supermarkets, Inc., v. Darling-Delaware Co.*, 998 F. 2d 1224, 1230 (3d Cir. 1993).  When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment.  *Anderson*, 477 U.S. at 249–250.

Legal Analysis

Where, as here, no direct evidence of discrimination is being presented and only circumstantial evidence exists, the Supreme Court's analyses in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981) provide the formulation for allocating the requisite burdens of proof and production.  To prove a discrimination claim under the burden-shifting analysis set forth in *McDonnell Douglas Corp.*, first, the plaintiff must establish a prima facie case of discrimination.  411 U.S. at 802; *Burdine*, 450 U.S. at 252–253.  If the plaintiff succeeds, the burden of production then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the unfavorable

employment decision.  *Id.*  The burden then shifts back to the plaintiff to show by a

preponderance of the evidence that the nondiscriminatory reasons articulated by the defendant

were merely a pretext for discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 805; *Burdine*,

450 U.S. at 253.

1.   Gender Discrimination under Title VII and the PHRA

Fichter has asserted her claims of gender discrimination as parallel Title VII and PHRA

claims.  The same framework is utilized to analyze employment discrimination claims under

both Title VII and the PHRA; therefore, the Court addresses both claims simultaneously.  *See*

*Riding v. Kaufmann's Dept. Store*, 220 F. Supp. 2d 422, 447 (W.D. Pa. 2002) (*citing Connors v.*

*Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998); *see also Atkinson v. LaFayette Coll.,* 460

F.3d 447, 454 (3d Cir.2006) (finding claims under the PHRA are interpreted coextensively with

Title VII claims).  The relevant portion of Title VII provides:

**§ 2000e-2.  Unlawful employment practices**

**(a) Employer practices.**    It shall be unlawful employment practice for an
employer --
>    (1)  to fail or refuse to hire or to discharge any individual, or otherwise to
>    discriminate against any individual with respect to his compensation,
>    terms, conditions, or privileges of employment, because of such
>    individual's race, color, religion, sex, or national origin;

42 U.S.C. § 2000e-2(a)(1) (West, Westlaw through P.L. 112–139)[3].

---

[3] The relevant part of the PHRA provides:

>    It shall be an unlawful discriminatory practice . . .
>
>    (a) [f]or any employer because of the race, color, religious creed, ancestry, age, sex,
>        national origin or non-job related handicap or disability or the use of a guide or
>        support animal because of the blindness, deafness or physical handicap of any
>        individual or independent contractor, to refuse to hire or employ or contract with,
>        or to bar or to discharge from employment such individual or independent
>        contractor, or to otherwise discriminate against such individual or independent
>        contractor with respect to compensation, hire, tenure, terms, conditions or

6

The requirement that the plaintiff establish a prima facie case of unlawful discrimination under the applicable statutory provisions "is not intended to be onerous." *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.1995), *cert. denied*, 515 U.S. 1159 (1995). A prima facie case raises an inference of unlawful discrimination because the courts presume that the challenged actions, if left unexplained, were "more likely than not based on the consideration of impermissible factors." *Id.* In *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 411 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit made clear that "the elements of a prima facie case depend on the facts of the particular case[,]" and that "a prima facie case cannot be established on a one-size-fits-all basis." Thus, "the prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." *Sarullo v. United States Postal Service,* 352 F.3d 789, 797-798 (3d Cir. 2003).

In the instant case, in order to establish a prima facie case of gender discrimination, Fichter must show by a preponderance of the evidence that (1) she is a member of a protected class, (2) she satisfactorily performed her job, (3) she suffered an adverse employment action, and (4) circumstances exist that give rise to an inference of unlawful discrimination, such as might occur when similarly situated non-members of the protected class were treated more favorably. *See Johnson v. McGraw-Hill Companies,* 451 F. Supp. 2d 681, 697 (W.D. Pa. 2006) (citing *Goodwin v. Board of Trustees of the University of Illinois*, 442 F.3d 611, 617 (7th Cir. 2006); *Grande v. State Farm Mutual Automobile Insurance Co.*, 83 F. Supp. 2d 559, 561 (E.D. Pa. 2000)).

The parties do not appear to dispute that Plaintiff is a member of a protected class or that

---

privileges of employment or contract, if the individual or independent contractor
is the best able and most competent to perform the services required.

43 Pa. Stat. Ann § 955 (West, Westlaw through 2012 Reg. Sess.).

she was qualified for her position.  However, the parties disagree substantially with regard to the facts and circumstances surrounding Fichter's separation from AMG, and thus whether Fichter suffered "an adverse employment action."  The United States Court of Appeals for the Third Circuit has defined "an adverse employment action" under Title VII as "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  *See Storey v. Burns International Security Services*, 390 F.3d 760, 764 (3d Cir. 2004) (*quoting Cardenas v. Massey*, 269 F.3d 251, 253 (3d Cir. 2004).  AMG contends that Fichter voluntarily resigned, while Fichter maintains that she was involuntarily terminated, or, in the alternative, that she was constructively discharged.

Ultimately though, even assuming, *arguendo*, that a genuine dispute of material fact exists as to whether Fichter was terminated by AMG, was constructively discharged, or whether she resigned her position, that dispute is moot, because there is no evidence of gender discrimination.

The gravamen of Fichter's gender discrimination claim is that Brian Cohen preferred to have male employees report to him over female employees (Am. Compl. ¶ 33); he replaced Fichter in her former position with Cercone, a male employee (Am. Compl. ¶ 37); and he transferred Fichter to a "functionless position" (*See* Am. Compl. ¶ 37) because "he wanted her to be dissatisfied and bored with her employment" (Pl's Br. at 13).  Assuming, *arguendo*, that Fichter can establish a prima facie case of gender discrimination under Title VII and the PHRA, the Court turns to the second prong of the *McDonnell Douglas* analysis.  The burden of production shifts to AMG to rebut the presumption of discrimination by producing evidence that the adverse employment action resulted from legitimate and non-discriminatory motives.  *See Burdine*, 250 U.S. at 254.  AMG may satisfy this "relatively light burden" by "introducing

evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  The Court is satisfied that AMG has met its burden of production by articulating the following "legitimate, nondiscriminatory reasons" for its actions.

AMG asserts that Fichter has failed to show pretext on the part of AMG in moving her to the position assisting Burstein, as working for Burstein was "an important and valuable job." Def's Reply in Supp. of Def's Mot. for Summ. J. at 8.  Burstein testified that he has been a top producer with AMG for several years, resulting in a high workload and need for assistance from "numerous individuals" to ensure timely processing of orders and payments for his accounts. (Decl. of John R. Burstein ¶¶ 2–3).

Additionally, AMG asserts that Fichter was the "best person to assist Burstein (other than perhaps Zorn, who, as an officer and director of Defendant, was not going to be assigned to an administrative support role)."  Def's Reply in Supp. of Def's Mot. for Summ. J. at 8.  Cohen testified that (1) Burstein needed "specialized administrative support for which Ms. Fichter was ideally suited;" (2) Fichter had "tremendous technical skills in the areas that [Burstein] needed, and the tenacity to follow up on transactions that required such attention;" (3) Fichter was to assist Burstein with "general clerical functions, many of which she had previously performed;" and (4) Fichter "was also familiar and had previously dealt with many of [Burstein's] clients." (Decl. of Brian S. Cohen ¶¶ 10, 12, 14).  Furthermore, in 2008, AMG transitioned to a new accounting software system.  (Decl. of Brian S. Cohen ¶ 9).  Cohen testified that Cercone was able to complete the scrap accounts payable work more promptly than Fichter (Supplemental Decl. of Brian S. Cohen ¶ 9), that he was "doing a better job in the scrap accounts payable role

9

than [Fichter] had previously done," and that Cercone "was better able and more motivated to work with [the] new accounting software system than was [Fichter], which made [Cercone] a better fit in the scrap accounts payable role going forward." (Decl. of Brian S. Cohen ¶ 10). Thus, AMG claims that Fichter was the logical choice for the position with Burstein.

Finally, AMG contends that Fichter was not permitted to assist other employees with their work so that she could focus on her assignment with Burstein as her priority.   Def's Reply in Supp. of Def's Mot. for Summ. J. at 9–10.  Burstein testified that he was "astounded" when Fichter testified that she was only spending one hour per week assisting him, as "the work [he] expected she was doing would have kept her busy eight hours each day." (Decl. of John R. Burstein ¶ 9).  He also testified that his levels of production at the time Fichter was assigned to work for him "generated more than enough work to maintain Ms. Fichter at a typical workload for her position." (Decl. of John R. Burstein ¶ 7).  Similarly, Cohen testified that, "[if Fichter] was only working one hour per week, [he] was not aware of that.  It was [his] understanding that assisting [Burstein] was an assignment that required [Fichter's] undivided and full-time attention." (Supplemental Decl. of Brian S. Cohen ¶ 3).  He also stated he did not approve her requests to assist others in the office with their work because he "expected her to focus on her work with [Burstein] as her priority, rather than trying to regain her old work." (Decl. of Brian S. Cohen ¶ 17).  Specifically with regard to not allowing Fichter to assist Cercone, Cohen testified that he was under the impression that because Cercone was working in a new accounting software system, Cercone preferred that Fichter not "get in the way by insisting on doing things 'her way' as opposed to the way he did them." (Decl. of Brian S. Cohen ¶ 17).

Because AMG has proffered legitimate reasons for its actions, the final prong of the *McDonnell Douglas* analysis requires that the burden again shift to Fichter to demonstrate by a

preponderance of the evidence that a discriminatory purpose was a determinative or motivating factor in AMG's decisions. *See Fuentes*, 32 F.3d at 764. Specifically, Fichter must point to evidence in the record which would enable a reasonable factfinder to (1) "disbelieve the legitimate, non-discriminatory reason(s) set forth by the employer; or" (2) to "believe that an invidious discriminatory reason was more likely than not a determinative cause of the employment action." *See Davila v. Victory Sec. Agency*, 2010 WL 2636067 at *3 (W.D. Pa, June 28, 2010) (citing *Fuentes*, 32 F.3d at 764).

Under the first prong of this test, Fichter must demonstrate that AMG was motivated by a discriminatory animus in moving her to the position with Burstein. *See Fuentes*, 32 F.3d at 765 (citing *Ezold v. Wolf, Block, Schorr, & Solis-Cohen,* 983 F.2d 509, 531 (3d Cir. 1992). Fichter may meet this burden by demonstrating "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 765 (citations and internal quotations omitted).

Fichter does not dispute that "getting [Burstein] on track was very important to [AMG]" (Fichter Dep. 26:12–26:14), and that it was important for AMG to attempt to collect on Burstein's accounts (Fichter Dep. 78:5–78:22). However, Fichter contends that in her opinion, the position with Burstein was "unnecessary," due to the fact that Burstein "wasn't going to change," and therefore, the position "was a waste of time." (Fichter Dep. 77:14–78:10). While Fichter may hold the opinion that her assignment to Burstein did not constitute a wise business decision, that opinion bears no legal significance to the instant issue. *See Johnson*, 451 F.Supp.2d at 698. The essential question is "not whether the employer is wise, shrewd, prudent

or competent," but rather whether the business decision was motivated by discriminatory animus. *See Fuentes*, 32 F.3d at 765 (citing *Ezold*, 983 F.2d at 531).  The Court will not involve itself in the subjective business decisions of an employer unless there is evidence of discrimination.  *See Ezold*, 986 F.2d at 527.

At most, Fichter points to one, immaterial conflict in the record.  Fichter testified that Cohen told her Burstein had specifically requested her to assist him (Fichter Dep. 14:8–14:10), but Burstein testified that Fichter began working for him at the suggestion of Cohen. (Decl. of John R. Burstein ¶ 5).  This "conflict" does not support a gender discrimination claim.  Fichter must do more than simply point to an inconsistency; she must demonstrate that such an inconsistency would enable a reasonable fact-finder could rationally find [it] unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765.  Fichter herself testified that the only person at the company more qualified to work with Burstein would possibly have been Zorn, an officer and director of AMG.  (Fichter Dep. 14:11–14:17).  As such, the Court finds that Fichter's reassignment to the position with Burstein was not a pretext for unlawful gender discrimination.

Next, Fichter testified that because she had a small amount of work to perform in her role assisting Burstein, she requested to be able to assist the following employees with their work: Greg Cercone, Camille Connors (human resources), Lisa Schaffer (receptionist/accounts payables/freights payables), Karen Dustevich (broker administrator), Kara Taylor (broker administrator), and Kathy Mikovitz (broker administrator).  (Fichter Dep. 30:2–32:15).  Fichter testified that Connors, Schaffer, Dustevich, Taylor, and Mikovitz told her they did not have any work which she could assist them with.  (Fichter Dep. 31:7–32:10).  Significantly, the Court notes that Fichter asked these employees themselves, not Cohen, if they had any work with

which she could assist, and, in fact, was advised by them that they did not.  Additionally, the record is devoid of any evidence that Cercone required assistance with his position other than Fichter's assertion that "he was busy all the time and he did not have the time" to get to his work. (Fichter Dep. 29:17–30:1).  Fichter may not rely on unsupported assertions or conclusory allegations to withstand a motion for summary judgment.  *See Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex Corp.*, 477 U.S. at 325).  The record also does not reveal that Fichter ever advised Cohen or any other manager that she was only working one hour per week for Burstein.  The Court thus finds that Fichter has failed to establish pretext under the first prong of the analysis.

Under the second prong of the analysis, it must be determined if Fichter has pointed "to evidence with sufficient probative force" that would allow a factfinder to conclude by a preponderance of the evidence that Fichter's gender was a motivating or determinative factor in the adverse employment decision.  *See Simpson v. Kay Jewelers Div. of Sterling, Inc.*, 142 F.3d 639, 644–645 (3d Cir. 1998).

In an attempt to create an inference of gender discrimination, Fichter first points to the fact that Cohen hired a male (Cercone), as her assistant, when there was no need.  Pl's Br. at 13. This argument is undercut by Fichter's own proffered reasons for claiming a hostile work environment, that Cohen moved a former assistant, Erin Peters, to a new position, leaving her with twice as much work to do.  (Fichter Dep. 35:16–21).  Additionally, Cohen testified that Fichter assisted Cohen in interviewing candidates for the position and participated in selecting Cercone.  (Supplemental Decl. of Brian S. Cohen ¶ 4).

Fichter then asserts that once Cercone was hired, "Cohen began to strip [her] of her duties and assign them to Cercone."  Pl's Br. at 12.  As noted previously, Fichter testified that after the

reassignment of Erin Peters to a new position, Fichter was performing the work of two people. (Fichter Dep. 35:16–21).  Fichter testified that Cercone was hired to assist her, (Fichter Dep. 35:16–17), consistent with Cohen's testimony that upon hiring Cercone, Cohen expected that Fichter and Cercone would share the accounts payable duties.  (Supplemental Decl. of Brian S. Cohen ¶ 5).

Third, Fichter insinuates that discriminatory animus can be read into the fact that Cercone replaced her in the scrap accounts payable position while she was on medical leave.  Pl's Br. at 12.   As discussed previously, Cercone was performing well at his position in scrap accounts payable, and Fichter was the most logical choice to work in the position for Burstein, a fact which she does not dispute.

Consequently, it is difficult to fathom how the evidence presented would enable a reasonable fact-finder to draw an inference of gender discrimination, particularly when Fichter assisted with the hiring of Cercone.  The Court therefore finds that Fichter's allegations of unlawful gender discrimination are without merit.

2.  Hostile Work Environment under Title VII and the PHRA

In order to prove a prima facie case of discrimination under Title VII based on a hostile work environment, a plaintiff must establish the following: (1) the employee suffered intentional discrimination based on gender, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability.  *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990)).  As the United States Supreme Court explained in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993), the determination of

whether or not a work environment is hostile must be based on the totality of the circumstances. *See also Cardenas v. Massey*, 269 F.3d 251, 260–261 (3d Cir. 2001) (noting that a determination of whether or not a hostile work environment is established must be based on the entire record).

Here, in order for Fichter's hostile work environment claim to withstand summary judgment, Fichter must present "sufficient evidence to give rise to an inference of discrimination by offering proof that her 'workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abuse working environment,' and the conduct [was] based on [her gender]."  See *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 278–279 (3d Cir. 2001) (*quoting Harris*, 510 U.S. at 21).   AMG argues that Fichter "has not adduced any evidence … that any purported harassment was severe or pervasive."  Def's Reply in Supp. of Def's Mot. for Summ. J. at 15.  The Court agrees.

Fichter asserts that Brian Cohen created a hostile work environment towards her because of her gender for numerous reasons, including:  (1) telling her she should get a job closer to home, (2) telling her she was disrespectful if she disagreed with him, (3) telling her to turn more work over to Cercone, (4) wanting her work done more quickly so that Cohen's work was not held up, (5) asking Cercone, but not Fichter, to do work for him even though Cercone worked for Fichter, (6) reassigning a female employee who previously worked with her to another position and leaving her with twice the workload, (7) not giving her a raise in four to five years, (8) requiring that she advise him if she would be arriving late or leaving early, (9) asking her for information but leaving the office without telling her before she could provide it to him, (10) keeping track of her vacation time, (11) providing her with little notice when auditors were coming, (12) asking for her opinion, but doing what he wanted if he did not like her answer, (13)

not compensating her when she filled in for Roy Rowe, and (14) not respecting the extra work she performed "unless it benefitted Brian Cohen." *See* Am. Compl. ¶ 36(a) – (m).  Cohen, Zorn, and Burstein all testified that Fichter had never complained to any of them of having been subjected to a hostile work environment.  (Decl. of Brian S. Cohen ¶ 28, Decl. of Ronald R. Zorn ¶ 14, Decl. of John R. Burstein ¶ 13).

At the outset, it is noted that Cohen has held the position of Chief Financial Officer ("CFO") at AMG since 1999.  (Decl. of Brian S. Cohen ¶ 1).  At all times relevant to this case, Cohen was Fichter's boss.  (Fichter's Dep. 34:4).  As such, the Court finds that many of Fichter's allegations were certainly within the purview of typical managerial functions performed by one's boss.  Cohen testified that he keeps track of vacation usage and work schedules of all employees (salaried or hourly) that report to him, including Cercone during the time Cercone reported to him.  (Supplemental Decl. of Brian S. Cohen ¶¶ 7–8).  While Fichter may have preferred that Cohen provide her with more advance notice that the auditors would be coming, or advise her specifically when requested information would be needed, Title VII does not "guarantee a utopian workplace." *See Waite v. Blair*, 937 F. Supp. 460, 488 (W.D. Pa. 1995) (quoting *Vore v. Ind. Tel. Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994).  Cohen testified that Fichter was hesitant to hire another employee to assist her with handling scrap accounts payable after Erin Peters was reassigned.  (Supplemental Decl.of Brian S. Cohen ¶ 4).  Further, Fichter admits that Cercone was hired specifically to assist her (Fichter Dep. 35:16–17).  Moreover, Cohen testified that Fichter assisted him with interviewing candidates for the position and ultimately in making the decision to hire Cercone.  (Supplemental Decl. of Brian S. Cohen ¶ 4).

Additionally, while Fichter admitted that Cohen was under no obligation to follow her opinion (Fichter 42:22–23), she contends that Cohen would have been more inclined to follow

16

the advice of men, naming specifically Zorn, Burstein, and Cercone.  (Fichter 43:11–13).  The

Court notes Zorn has been the Chief Operating Officer at AMG since 1999 (Decl. of Ronald R.

Zorn ¶¶ 1, 3), and that John Burstein has been a trader for AMG since 2000, has been the top

producer in his field for the "last several years," and that Fichter worked for him in the capacity

of an administrative support assistant.  (Decl. of John R. Burstein ¶¶ 1, 2, 4).  Thus, Zorn and

Burstein cannot be considered to be "similarly situated" to Fichter.  That Cohen was more

receptive to their opinions over Fichter's does not give rise to an inference of gender

discrimination.  Moreover, with respect to Cercone, Fichter fails to introduce any evidence of

this claim other than her conclusory allegation.  Absent specific facts, these speculations and

generalities, even if genuine, do not permit an inference of discrimination to be drawn.  *Maurizio*

*v. Fox Chapel Foods, Inc.*, 2006 WL 2571397 at *8 (W.D. Pa. 2006).  Such unsubstantiated

speculation is not sufficient to withstand summary judgment.  *Podobnik v. U.S. Postal Serv.*, 409

F.3d 5584, 594 (3d Cir. 2004).

　　　　Fichter testified that before she returned from medical leave, Cohen told her she should

look for a job closer to home, (Fichter 89:5–9), and that Cohen made "comments like [she] was

being disrespectful." (Fichter 64:8–9).  Both the Supreme Court and the Court of Appeals for the

Third Circuit have held that "offhand comments, and [non-serious] isolated incidents" are not

actionable under Title VII.  *See Abramson*, 260 F.3d at 280 (quoting *Faragher*, 524 U.S. at 788);

*Pa. State Police v. Suders*, 542 U.S. 129 (2004).  Fichter admitted that she had complained about

the length of her commute.  (Fichter Dep. 89:12–13).  The Court does not consider a one-time

comment that Fichter should look for work closer to home or references to Cohen making

occasional comments that she was being disrespectful to rise to the serious level of being

actionable under Title VII.

17

The Supreme Court has emphasized that Title VII does not create a "'general civility code,'" and "does not provide a cause of action for 'ordinary tribulations of the workplace.'" *See Faragher v. Boca Raton*, 524 U.S. 775, 778 (1998) (internal citations omitted).  Title VII is only violated where the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).  The Court finds that the evidentiary record, viewed in the light most favorable to Fichter, falls far short of the applicable standard in that it does not reflect that Fichter suffered severe or pervasive discrimination due to her gender to the extent that it would alter the conditions of her employment.  Accordingly, the Court need not reach whether Fichter has presented sufficient evidence of the other elements at issue, and AMG is entitled to summary judgment on the hostile work environment claim.

After careful consideration of AMG's Motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Fichter on her claims of hostile work environment and gender discrimination under Title VII and the PHRA.

An appropriate order follows.


McVerry, J.


18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **SHIRLEY FICHTER,** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **02:10 cv 00367** |
| **AMG RESOURCES CORPORATION,** | ) | |
| **Defendant.** | ) | |

## ORDER OF COURT

AND NOW, this 26th day of July, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that Defendant's **MOTION FOR SUMMARY JUDGMENT** (Document No. 37) is **GRANTED**, and judgment is entered in favor of Defendant and against Plaintiff.  The clerk shall docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:  Dirk D. Beuth, Esquire
     Email: dbeuth@windstream.net
     Neal A. Sanders, Esquire
     Email: lonas@earthlink.net

     John C. Artz, Esquire
     Email: john.artz@ogletreedeakins.com